**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

FARID MARZUQ,                         :
                                      : Civil Action No. 09-3933 (RBK)
               Plaintiff,             :
                                      :
                                      :
         v.                           :        **OPINION**
                                      :
CHARLES ALBINO, et al.,               :
                                      :
               Defendants.            :


**KUGLER**, District Judge

      Presently before the Court are three motions: (1) Plaintiff Farid Marzuq's ("Plaintiff")

Motion for Default Judgment [Docket Entry No. 22]; (2) Plaintiff's Appeal of the Magistrate Judge's

Order granting Defendants' Derrick Loury ("Loury" or "Mr. Loury") and Charles Warren ("Warren"

or "Mr. Warren") (collectively, "Defendants") request for an extension of time to answer [Docket

Entry No. 24]; and (3) Defendants' Motion to Dismiss and for Summary Judgment [Docket Entry

No. 25]. The Court, having considered the motions without oral argument pursuant to Fed. R. Civ.

P. 78, will hereby deny Plaintiff's Motion for Default Judgment as moot; deny Plaintiff's Appeal of

the Magistrate Judge's January 26, 2010 Order as moot; deny Defendants' Motion to Dismiss for

failure to state a claim under the First Amendment Establishment Clause; grant Defendants' Motion

for Summary Judgment as to the retaliation claim; and dismiss Plaintiff's First Amendment Free

Exercise of Religion claim without prejudice and grant him leave to amend.  Further, the Court will

also dismiss Plaintiff's claims against Defendants State of New Jersey, New Jersey Department of Corrections and George Hayman

## I. FACTUAL BACKGROUND

Plaintiff is currently incarcerated at the Southern State Correctional Facility, where he has been since November 2008 when he was convicted of two drug-related charges. (Docket Entry No. 8, Pl.'s Compl. ¶ 1; Docket Entry No. 25-2, Defs.' Statement of Material Facts ¶ 1.) As a result of his Uniform Defendant Intake Interview, during which he admitted to "snorting five to ten bags of heroin every day", Mark Lee, the Supervisor of the Addictions Assessment Unit in the Office of Drug Programs, referred Plaintiff to the Therapeutic Community for substance abuse treatment. (Defs.' Statement of Material Facts ¶ 6.) Thereafter, Plaintiff was given an Inmate Assignment Advisory, which advised Plaintiff of his rights and responsibilities regarding his assignment to the Therapeutic Community. (*Id.* at ¶¶ 9-10.) Plaintiff signed the Inmate Assignment Advisory which stated that he would be given a disciplinary infraction and a possible loss of minimum custody status if he refuses a classification therapeutic community assignment, or once in the treatment program, if he is charged for behavior maladjustment or refuses to participate. (*Id.* at ¶ 11.) Subsequently, Plaintiff was approved for the full minimum community program and admitted. (*Id.* at ¶ 12-13.) On June 11, 2009, Plaintiff received a behavioral maladjustment discharge from the program for refusing to follow the directives of the program. (*Id.* at ¶ 13.) As a result of the discharge from the therapeutic community program, Plaintiff's status was changed to medium custody. Thereafter, Plaintiff filed a complaint alleging that the program violates his First Amendment right to free exercise of religion and that he was subjected to retaliation when he chose to leave the program.

(Docket Entry No. 1, Pl.'s Compl.)  Plaintiff's complaint requests both injunctive and monetary relief.  (*Id.*)

## II. PROCEDURAL HISTORY

Plaintiff filed the initial complaint in this matter on August 7, 2009.  (Docket Entry No. 1.) On August 12, 2009, the Court granted Plaintiff's *in forma pauperis* application and allowed Plaintiff's First Amendment and retaliation claims against Defendants Loury and Warren to proceed. (Docket Entry No. 2, Court's August 12, 2009 Order.)  Plaintiff's claims against Charles Albino and George Hayman were dismissed without prejudice because said claims were based solely on the untenable theory of vicarious liability.  (*Id.*)  The Court allowed Plaintiff to file an amended complaint addressing the deficiencies within thirty days of the Order, which Plaintiff filed on August 28, 2009. (Docket Entry No. 6.) Plaintiff then filed a second amended complaint on October 2, 2009 (Docket Entry No. 8.) Plaintiff's second amended complaint renamed George Hayman as a defendant and added the State of New Jersey and the New Jersey Department of Corrections as defendants. (*Id.* at ¶¶ 2-3, 17.)  Service of process was accepted by Defendants Loury and Warren  on September 22, 2009.  (Doc. No. 12-2,  Decl. of Susan M. Scott ¶ 8 dated Dec. 31, 2009.) On October 7, 2009, Defendants Loury and Warren obtained a clerk's extension of time, until October 28, 2009, to file an answer or otherwise respond to Plaintiff's complaint. (Doc. No. 10, Clerk's October 7, 2009 Text Order.) On October 27, 2009 Defendants Loury and Warren filed a motion for an extension of thirty days in which to answer, move or otherwise respond to the complaint (Docket Entry No. 12), which was granted by the Court on December 2, 2009. (Docket Entry No. 17.)  On December 31, 2009, Defendants Loury and Warren filed a second motion for an extension of thirty days from the date on which the last State Defendant is served in which to answer, move or otherwise respond to the

3

complaint. (Docket Entry No. 19.)  Plaintiff filed opposition to said motion, as well as a motion for

default judgment against what appears to be all defendants.  (Docket Entry Nos. 21 and 22.)  On

January 26, 2010, the Court granted Defendants Loury and Warren's motion in part, giving them

thirty days from the date of the Order to answer or otherwise move.  (Docket Entry No. 23.)  On

February 5, 2010, Plaintiff filed an appeal of the Magistrate Judge's Order to this Court.  (Docket

Entry No. 24.)  On February 25, 2010, Defendants Loury and Warren filed a Motion to Dismiss and

for Summary Judgment in lieu of an answer. (Docket Entry No. 25.)  Plaintiff's Motion for Default

Judgment; Plaintiff's Appeal of the Magistrate Judge's Order granting an extension of time to

answer; and Defendants' Motion to Dismiss and for Summary Judgment are currently before this

Court.

## III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), **a court may dismiss an action for failure
to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all
factual allegations as true, construe the complaint in the light most favorable to the plaintiff,
and determine whether, under any reasonable reading of the complaint, the plaintiff may be
entitled to relief.'"** Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) **(quoting** Phillips
v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008)**). In other words, a complaint survives
a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim
to relief that is plausible on its face."** Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct.
1955, 167 L.Ed.2d 929 (2007).

**In making this determination, a court must engage in a two part analysis.** Ashcroft v.
Iqbal, --- U.S. ----, ---- - ----, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009); Fowler, 578 F.3d

4

at 210-11. First, the court must separate factual allegations from legal conclusions. *Iqbal*, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." *Id.* A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. *See id.*

Alternatively, summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir.2004) (quoting *Anderson*, 477 U.S. at 255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir.1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by " 'showing'-that is, pointing out to the district court-that there is an absence of evidence to

support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the nonmoving party must respond by "set [ting] out specific facts showing a genuine issue for trial." FED.R.CIV.P. 56(e)(2). "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *Id.*

## IV. Court's Analysis

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir.1994).

### A. First Amendment Claims Against Defendants Loury and Warren

#### 1. Establishment Clause

Defendants argue that Plaintiff's Complaint fails to state a claim upon which relief can be granted under the First Amendment. (Defs.' Motion 10.) Defendants base their argument on the Establishment Clause. Defendants argue that Plaintiff's Complaint fails to "set forth

6

any facts that would support a finding that the therapeutic community program to which he was assigned had a nonsecular purpose, that its effect advances or inhibits religion, or that it is an excessive entanglement with religion." (*Id.* at 10-11.) Defendants further argue that "the therapeutic community program does not violate Plaintiff's religious rights (Defs.'s Motion, Gentilini Decl., Ex. K.) [and] a review of the Resident Handbook for the therapeutic community program to which Plaintiff was assigned reveals that the program has a secular purpose, its effect neither advances nor inhibits religion, and it is not an excessive entanglement with religion. (*See Id.* at Ex. L.)" (Def.s Motion 11.)

Defendants base their motion to dismiss Plaintiff's First Amendment claim on the Establishment Clause, however, it appears that Plaintiff's Second Amended Complaint alleges that it was a violation of his First Amendment right to free exercise of religion to require that he participate in the therapeutic program or risk having his status elevated from minimum. (*See* Pl.'s Compl. at ¶¶ 8, 11, 15, 19, 22, 24, 25, 27 and 31.) Therefore, Plaintiff does not have to meet the pleading requirements for a claim under the Establishment Clause. Rather, he would have to comply with the pleading requirements for a claim of a violation of his right to free exercise of his religion. Thus, Defendants Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim under the Establishment Clause is denied . However, as further discussed below, the Court will dismiss Plaintiff's claim under the Free Exercise Clause of the First Amendment and permit Plaintiff to file a Third Amended Complaint addressing the deficiencies of said claim.

2. Free Exercise of Religion

The First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides, inter alia, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), including the protections of the First Amendment and its directive that no law shall prohibit the free exercise of religion, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "All prisoners must be afforded reasonable opportunities to 'exercise the religious freedom guaranteed by the First and Fourteenth Amendment.'" *Small v. Lehman*, 98 F.3d 762, 765 (3d Cir.1996) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972)).

"The mere assertion of a religious belief does not automatically trigger First Amendment protections, however. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir.2000). *See also Sutton v. Rasheed*, 323 F.3d 236, 250-51 (3d Cir.2003). Once such a sincerely held religious belief is demonstrated, an inmate may establish that a prison regulation or practice violates the right to free exercise of religion by showing that it violates the "reasonableness test" set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), and *O'Lone*, 482 U.S. at 349. The standards delineated in *Turner* and *O'Lone* indicate that when a prison regulation or practice encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest. *Turner*, 482 U.S. at 89; *O'Lone*, 482 U.S. at 349.

The reasonableness standard involves the examination of the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at *de minimis* cost to valid penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 415-18 (1989); *Turner*, 482 U.S. at 89-91. However, prison administrators need not choose the least restrictive means possible in trying to further legitimate penological interests. *Thornburgh*, 490 U.S. at 411. Moreover, "[i]f the connection between the regulation and the asserted goal is arbitrary or irrational, [however,] then the regulation fails, irrespective of whether the other factors tilt in its favor." *Shaw v. Murphy*, 532 U.S. 223, 230-31 (2001).

In his Second Amended Complaint, Plaintiff alleges that he was denied his right to free exercise of religion by being forced to participate in the therapeutic community which violates his religion and then retaliated against for refusing to participate in the program by having his classification status increased. At the outset, the Court notes that Plaintiff does not state in his Complaint what religion he practices; nor does he state how participation in the therapeutic community violates said religion; and Plaintiff certainly does not provide enough information for the Court to adequately undertake the analysis required by *Turner* for a free exercise claim.

Therefore, the Court will dismiss Plaintiff's First Amendment claims against Defendants Loury and Warren without prejudice. Plaintiff shall have thirty days to file a

Third Amended Complaint which sufficiently sets forth his claim for violation of his right to free exercise of religion against Defendants Loury and Warren.[1] *See Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("it does not matter whether or not a plaintiff seeks leave to amend. We have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile"); *See also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110-111 (3d Cir.2002); *Shane v. Fauver*, 213 F.3d 113, 117 (3d Cir.2000). Defendants Loury and Warren are free to re-new their motions to dismiss and/or for summary judgment at that time.

## B. Retaliation Claims Against Defendants Loury and Warren

To succeed on a claim for retaliation, a prisoner must show, "(1) constitutionally protected conduct, (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.'" *Mitchell v.*

---

[1]To the extent Plaintiff would attempt to include in his Third Amended Complaint any claims against Defendants Loury and Warren in their official capacities for monetary damages , those claims are barred by the Eleventh Amendment. Absent a waiver of immunity by the state, the Eleventh Amendment precludes federal suits for money damages against state officers sued in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In his Second Amended Complaint, Plaintiff seeks money damages against state prison officials. Because nothing in §1983 abrogates a state's Eleventh Amendment immunity, that immunity bars Plaintiff's claims against Defendants in their official capacities. *See Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *see also Rodriguez v. Hayman*, No. 08-4239, 2009 WL 4122251, at *4 (D.N.J. Nov.23, 2009) (granting Eleventh Amendment immunity to employees of Bayside State Prison and New Jersey Department of Corrections); *Clayton v. Clement*, No. 06-5426, 2007 WL 4260002, at *5 (D.N.J. Nov.30, 2007) (granting Eleventh Amendment immunity to corrections officers at Bayside State Prison); *Grabow v. S. State Corr. Facility*, 726 F.Supp. 537, 539 (D.N.J.1989) (granting Eleventh Amendment immunity to Commissioner of the Department of Corrections).

*Horn*, 318 F.3d 523, 530 (3d Cir.2003) (quoting *Rauser*, 241 F.3d 330, 333 (3d Cir. 2001). **Even if a plaintiff satisfies these factors, "the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."** *Rauser*, 241 F.3d at 334.

Plaintiff alleges that he was retaliated against or "punished" by having his full minimum status changed when he refused to participate in the therapeutic community program. (*See* Pl.'s Compl at ¶¶ 11, 24 and 25.) Defendants Loury and Warren argue that summary judgment is appropriate because Plaintiff was not engaged in a constitutionally protected activity. (Defs.' Br. 13-14.) Even assuming *arguendo* that Plaintiff was engaged in constitutionally protected activity, Defendants argue that Loury and Warren did not subject Plaintiff to any adverse action. (*Id.*) Rather, Plaintiff received a behavioral maladjustment discharge from the therapeutic community program. (Exs. G, H to Gentilini Decl.) Defendants further argue that "[p]ursuant to *N.J.A.C.* 10A:9-4.6(c), '[a]s a condition of eligibility for consideration of any custody status lower than medium custody, inmates who are assigned to a therapeutic community (T.C.) or treatment program must accept, participate and successfully complete the assignment.' When an inmate fails to accept, participate in and successfully complete his assigned therapeutic community or treatment program, an I-1 override classification code is used to assign that inmate to medium custody status assignment or above although he is otherwise eligible for minimum custody status. *N.J.A.C.* 10A:9-2.14(a)(11)." (Defs.' Br. 13.) Defendants further argue that Defendants Loury and Warren did not have any involvement or discretion in whether Plaintiff was returned to medium custody as a result of his discharge from the therapeutic community because it was the

11

Institutional Classification Committee which approved an I-1 override code to be applied to Plaintiff's classification due to his behavioral maladjustment discharge from the therapeutic community program. (*Id.* at 13-14.)

In order to prevail on his claim for retaliation against Defendants Warren and Loury, Plaintiff must show that his refusal to participate in the therapeutic community program because the program's practices are against his religion is constitutionally protected activity; that his loss of full minimum status was an adverse action taken by Defendants Loury and Warren; and that there is a causal link between his refusal to participate based on religious reasons and the loss of his classification. It is unnecessary for the Court to reach the question as to whether Plaintiff's refusal to participate in the therapeutic program is constitutionally protected activity at this time because it is clear that Plaintiff's change from full minimum to medium classification was not an adverse action taken by Defendants Loury and Warren.

At the outset, the change in classification was made pursuant to the relevant sections of the New Jersey Administrative Code governing inmate classifications, which state that an inmate assigned to "a therapeutic community...must accept, participate and successfully complete the assignment." *See N.J.A.C.* 10A:9-4.6(c); *N.J.A.C.* 10A:9-2.14(a)(11). Further, even if the change in classification could theoretically be deemed an adverse action, Defendants Loury and Warren were not responsible for changing Plaintiff's classification. Rather, the Institutional Classification Committee approved the classification override which changed Plaintiff's status from full minimum to medium. Therefore, Plaintiff cannot meet the necessary prongs to succeed on his claim of retaliation against Defendants Loury and Warren

and as such, Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim is hereby granted.

## C. Claims against Defendants State of New Jersey and NJ DOC

In Plaintiff's Second Amended Complaint, for the first time, he also asserts claims against the State of New Jersey and the New Jersey Department of Corrections.  Against the State of New Jersey, Plaintiff is requesting both injunctive relief and monetary damages. (Pl.'s Comp. ¶¶ 14-15.)  However, "absent a state's consent, the eleventh amendment bars a civil rights suit in federal court that names the state as a defendant, even a claim seeking injunctive relief." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978)).  Since the State of New Jersey has not consented to the present suit, Plaintiff's claims against Defendant State of New Jersey are barred and hereby dismissed. For the same reasons, Plaintiff's claims against the Department of Corrections must also be dismissed. *See Grabow v. Southern State Correctional Facility*, 726 F.Supp. 537, 539 (D.N.J. 1989) (holding that the DOC is part of the state for purposes of the eleventh amendment and are not "persons" within the meaning of § 1983).

## D. Claims Against George Hayman

For the reasons stated in this Court's Order of August 12, 2009, Plaintiff's claims against Defendant George Hayman under 42 U.S.C. §1983 are again hereby dismissed. Further, Plaintiff's Second Amended Complaint also alleges for the first time a claim against Defendant Hayman under 42 U.S.C. § 1986. (Pl.'s Second Am. Compl. ¶ 23; "Defendnat [*sic*] George W. Hayman though his in [*sic*] action violated 42 U.S.C. 1986, which also caused the plaintiff to continue to suffer mental and physical anguish, and to be currently not returned

13

back to his full minimum status as agreed to in the above named case and resulting consent

decree.")

   42 U.S.C. §1986 relates to an individual's failure to prevent the wrongs conspired to be

done in 42 U.S.C. §1985(3), which states that:

> If two or more persons in any State or Territory conspire...for the
> purpose of preventing or hindering the constituted authorities of
> any State or Territory from giving or securing to all persons
> within such State or Territory the equal protection of the
> laws...[and] in any case of conspiracy set forth in this section, if
> one or more persons engaged therein do, or cause to be done, any
> act in furtherance of the object of such conspiracy, whereby
> another is injured in his person or property, or deprived of
> having and exercising any right or privilege of a citizen of the
> United States, the party so injured or deprived may have an
> action for the recovery of damages occasioned by such injury or
> deprivation, against any one or more of the conspirators.

42 U.S.C. §1985(3) requires that Plaintiff show the following: (1) a conspiracy; (2) for the

purposes of depriving another of equal protection or equal privileges and immunities; (3) any

act in furtherance of the conspiracy committed or caused to be committed by a conspirator;

(4) whereby another was injured in his or her person or property or deprived of a right or

privilege as a United States citizen. *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1172-73 (3d.

Cir. 1978) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 29 L.Ed.2d 338

(1971)).  In his Second Amended Complaint, Plaintiff does not allege that there was any

conspiracy amongst the Defendants, which is the first requirement in order to state a valid

claim under §1985(3).  Therefore, Plaintiff's claims under 42 U.S.C. §1985(3) must be

dismissed.  Further, Plaintiff has also failed to state a claim under 42 U.S.C. §1986, since that

section merely gives a remedy for knowing that a violation of 42 U.S.C. §1985 is about to be

committed and failing to prevent said violation. *DeFrank v. Pawlosky*, 480 F.Supp. 115, 118
n.9 (W.D. Pa. 1979).

## V. Conclusion

For the foregoing reasons, Defendants Loury and Warren's Motion to Dismiss for
failure to state a claim upon which relief can be granted under the First Amendment's
Establishment Clause is denied. The Court will dismiss Plaintiff's First Amendment Free
Exercise of Religion claim against Defendants Loury and Warren without prejudice and allow
Plaintiff thirty days from the date of this opinion to amend his complaint to state a valid claim
for violation of his right to free exercise of religion. Defendants Loury and Warren's Motion
for Summary Judgment on the retaliation claim is hereby granted. Defendants Loury and
Warren's remaining motions to dismiss and/or for summary judgment are hereby denied
without prejudice and Defendants are free to renew their motions after Plaintiff has filed his
third amended complaint. The Court will *sua sponte* dismiss Plaintiff's claims against
Defendants State of New Jersey, New Jersey Department of Corrections and George Hayman
pursuant to 28 U.S.C. §1915(e)(2) and 1915A. Plaintiff's Motion for Default Judgment and
Appeal of the Magistrate Judge's Order are hereby dismissed as moot.


Dated:   7.29.10


HONORABLE ROBERT B. KUGLER
UNITED STATES DISTRICT JUDGE